477 So.2d 134 (1985)
STATE of Louisiana
v.
Gerald BORNING.
No. KA 83 1334.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*136 Rene Salomon, Asst. Atty. Gen., Baton Rouge, for plaintiff-appellee.
Frank Gremillion, Baton Rouge, for defendant-appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
Defendant, Gerald R. Borning, and Kelly Ludwig, were charged by bill of information with forgery, a violation of La.R.S. 14:72. A jury convicted them as charged. Defendant was subsequently sentenced to serve ten years with the Department of Corrections. Defendant waived his right to counsel and filed a pro se appeal, alleging 121 assignments of error. His conviction was affirmed by this court on June 26, 1984.[1] The Louisiana Supreme Court, 462 So.2d 1256, on reconsideration of defendant's application for writ of certiorari, remanded the case to this court for renewed consideration after appointment of counsel, briefing and argument.
In this appeal, defendant alleges 121 assignments of error of which only the following were listed in defendant's brief:
*137 1. The trial court erred in denying defendant's motion to suppress evidence.
19. The trial court erred in imposing an excessive sentence of 10 years when co-defendant Ludwig received probation.
20. The trial court erred in denying defendant probation.
21. The trial court erred in relying on false facts at the sentencing hearing.
27. The trial court erred in failing to give defendant an opportunity to correct an inaccurate pre-sentence investigation report or to review the report prior to sentencing.
59. The trial court erred in admitting a comparison of different typewriter print styles.
62. The trial court erred in denying defendant's motion for a new trial based upon the trial judge allowing the jury to conduct an experiment to ascertain facts not in evidence.
76. The trial court erred in denying defendant's motion for a new trial based on the trial judge abusing his discretion in overruling defendant's objection to the introduction of evidence and testimony by Mrs. E. Campbell as an expert witness of typing examplars and scientific and experimental tests.
108. The trial court erred in imposing an unconstitutionally excessive sentence.
On November 29,1982, Mrs. Vera Braud, age 84, became the intended victim of a confidence game known as "pigeon-dropping". The victim was a resident of an apartment building for retired persons in Baton Rouge known as the Catholic-Presbyterian Apartments. She received a telephone call in the afternoon from a man who identified himself as the head of an out-of-town auditing group employed by Louisiana National Bank (LNB) to investigate embezzlement activities by LNB employees. He told her she could help them find the guilty employees if she would cooperate. She became completely convinced that his story was authentic. She informed him that she had $2000.00 in her checking account at LNB. After getting her physical description and a description of her automobile, he told her a bank employee would meet her at the Florida Boulevard entrance (south entrance) to LNB's main office. The employee would give her a $4000.00 check to deposit and she, in turn, would withdraw $2000.00 in cash to turn over to the employee or to him.
The victim parked in the bank lot and walked to the main entrance. At this time Mr. Thomel Augustus, an employee of a law firm housed in the LNB building, was returning to the building after running an errand. He observed a young woman (Ludwig) carrying a brown briefcase "almost running" past the south bank entrance towards the west entrance. Defendant (age 45) was behind her, "trying to attract her attention by giving her a signal [by] hitting ... his chest....". Defendant appeared angry and engaged in an animated conversation with Ludwig and pointed in the direction of the east entrance where the victim was standing. Ludwig then quickly walked over and began talking to Mrs. Braud. She then led her around to the south entrance and gave her a piece of paper which was later identified as the forged $4000.00 check. The victim entered the bank and Ludwig walked quickly over to a 1974 station wagon with Illinois license plates parked on the street on the east side of the bank and sat on the passenger side. In the meantime, defendant had walked around the north side of the bank and met Ludwig at the car where the two conferred. By this time, Mr. Augustus had become suspicious of the activities of Ludwig and defendant. He approached Baton Rouge Police Officer Ike Vavasseur, informed him of his suspicions, and pointed out the two suspects.
Officer Vavasseur observed defendant and Ludwig conversing at the station wagon. Defendant walked across the street from the bank entrance the victim had used, watching the door. After a short time, defendant entered the bank. Officer Vavasseur and Mr. Augustus also went into the bank and talked to a security guard. Mr. Augustus pointed out the victim *138 for the officer. Vavasseur observed Mrs. Braud at one of the bank teller stations and defendant was two or three customers behind her. Unlike the other customers, defendant did not appear to be waiting to make a transaction because he had no papers in his hand. Later, defendant took some loose bills from his pocket. Mrs. Braud was talking to Suzanne Skinner, a bank officer, and appeared to be experiencing some difficulties with her transaction. Vavasseur approached them and learned that Ms. Skinner was holding the transaction because she felt there were some problems with it. About this time, defendant left the customer line and began to leave the building. Vavasseur followed, and observed defendant enter the station wagon and attempt to leave. He asked defendant for his driver's license and called for assistance.
Shortly after Sergeant Terrell King (Baton Rouge City Police DepartmentForgery Division) arrived on the scene, he contacted Ms. Skinner. The suspect check was a $4000.00 cashier's check drawn on the Michigan Avenue National Bank of Chicago. It was dated November 23, 1982, and had "Vera Braud" as the payee. It was determined that this check was a forgery. Also, it was determined that the station wagon was registered to a Beulah M. Highland of Chicago, Illinois. Sergeant King placed the defendants under arrest.

ASSIGNMENT OF ERROR NO. 1:
In this assignment of error, defendant seeks to suppress evidence consisting of a blank cashier's check, a typewriter, and several pages of the Baton Rouge City Directory. Defendant contends the evidence was illegally seized from the station wagon in a search incident to arrest because his arrest was made without probable cause. Should the arrest be found to be valid, defendant contends the evidence should be suppressed because it was seized without a warrant.
Defendant argues that he was arrested by Vavasseur before any other officers arrived and that this arrest was without probable cause.

THE DETENTION
The record reveals that Vavasseur detained rather than arrested defendant. Vavasseur was conducting an investigatory stop pursuant to La.C.Cr.P. art. 215.1. That article allows law enforcement officers to make investigatory stops when the officer "reasonably suspects" the person has committed a crime. Although the requisite "reasonable cause" for an investigatory stop has been held to be something less than the standard of "probable cause", the detaining officer must still have knowledge of facts which imply criminal behavior to justify interference with an individual's freedom. State v. Hogan, 403 So.2d 1210 (La.1981). In determining the existence of reasonable cause, it is not particularly significant that the officer received information that was not firsthand. What is important is the nature of the information, i.e., whether it is such that reasonable and prudent men, not legal technicians, will act. See State v. Webb, 432 So.2d 362 (La.App. 1st Cir.1983). An informant's tip can provide a police officer with reasonable cause to detain and question a suspect. State v. Bolden, 380 So.2d 40 (La.1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). In the case before us, Officer Vavasseur was approached by a responsible, concerned member of the community who saw no need to cloak his actions in anonymity. This person informed Vavasseur that he thought a pigeon-drop was in progress, and described what he had seen. Vavasseur then observed defendant and Ludwig conversing by the station wagon, saw defendant cross the street to monitor the bank's south entrance, saw defendant enter the bank and get in the same line as the victim, saw there was a problem with the transaction, saw defendant leave the bank without making a transaction after Vavasseur approached the teller, and saw defendant enter the station wagon and attempt to depart with Ludwig. These personal observations, along with Augustus' statements, were sufficient to furnish Vavasseur with the reasonable cause to make an investigatory stop under article 215.1.
*139 Defendant was actually arrested by Sergeant King after he learned that the $4000.00 check was forged. The total time between detention and arrest was approximately 45 minutes.
The defendant correctly points out that there is no provision in article 215.1 for holding a suspect while an investigation is made. However, the Louisiana Supreme Court held in White v. Morris, 345 So.2d 461 (La.1977), that the right to detain a suspect temporarily to verify the information received from the suspect or to obtain information independently of the suspect's cooperation is inherent in article 215.1. Furthermore, it is the circumstances of each case which determine the nature of the detention. State v. Fauria, 393 So.2d 688 (La.1981). In a recent U.S. Supreme Court case, the Court found that while the length of an investigatory stop is an important factor in determining the reasonableness of the stop, the courts must also consider the purposes to be served by the stop. Further, in reviewing the length of a detention, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. U.S. v. Sharpe, ___ U.S. ___, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
Clearly, this case does not involve any delay unnecessary to the legitimate investigation of the law enforcement officers. Defendant presented no evidence that the officers were dilatory in their investigation. As soon as Sergeant King arrived on the scene, he placed a long distance call to the Chicago bank, explained the situation to them, contacted the correct bank officer, and had him investigate the suspicious check. Upon learning of the forgery, the suspects were immediately arrested.
We conclude that, given the circumstances facing them, the Baton Rouge City Police pursued their investigation in a diligent and reasonable manner.

THE ARREST
A law enforcement officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Bell, 395 So.2d 805 (La. 1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Buckley, 426 So.2d 103 (La.1983).
Once Sergeant King learned that the $4000.00 check was forged, he had knowledge that a crime had been committed and thus had probable cause to effect the arrest.
For the foregoing reasons, this portion of defendant's argument is without merit.

THE SEARCH
After defendant was arrested, several items were seized: a blank cashier's check, a typewriter, and several pages of the Baton Rouge City Directory. The typewriter and city directory pages were seized as the result of an inventory search of defendant's vehicle. A discussion of the seizure of the cashier's check is presented at a later point in this opinion.
After defendant's arrest, a decision was made to impound the vehicle. Sergeant King testified that a large quantity of personal belongings were visible in the station wagon which he feared would be stolen while the vehicle was in the impound lot. In order to guard against the possibility of theft, an inventory search was conducted prior to the arrival of the wrecker. As a result, a typewriter and several pages of the Baton Rouge City Directory, all of which were in plain view in the vehicle, were seized. At trial, it was shown that the typewriter could have been used to type portions of the forged check. Also, *140 there was a check mark beside Mrs. Braud's name and telephone number in the pages from the city directory.
An inventory search is an exception to the search warrant requirement. It is a search conducted to inventory the vehicle's contents in order to safeguard them, as an incident to the vehicle being impounded by the police for safekeeping or storage until the owner is released. State v. Jewell, 338 So.2d 633 (La.1976).
Defendant cites State v. Rome, 354 So.2d 504 (La.1978), as an example of a conviction that was reversed because of an improper inventory search. However, in that case, the defendant was arrested for a traffic violation and the police officer conducted an "inventory" search and opened two aluminum packets he found in the car's console. The packets contained contraband. In the case before us, the items found were not hidden but were in plain view inside a car parked at a parking meter on a public street.
Defendant also contends that this was not a proper inventory search because the officers made no attempt to provide defendant with an alternative to impounding the vehicle, citing Rome, supra. This is patently untrue as Sergeant King, at the motion to suppress hearing, testified that defendant told him the car belonged to a friend of his. King attempted to contact the "friend" at the telephone number and address given by defendant, but discovered that the address was that of a hotel and defendant's friend did not reside there. Interestingly, no evidence was presented at trial by defendant to prove the existence of his "friend".
The facts surrounding the search that produced the evidence support a conclusion that the police officers were collecting personal items found in the car which needed to be inventoried to safeguard them from possible theft. This portion of defendant's argument is meritless.
Defendant also objects to the seizure of the blank cashier's check during the inventory search. However, this item was seized in an entirely different manner. According to the police, Ludwig requested permission to retrieve her cigarettes from her briefcase. The officers obtained her consent to first search it for weapons. When the contents were dumped onto the hood of the car, a blank cashier's check from the same bank as the forged check fell out and was seized. Defendant does not contest this version of the seizure, nor does he present an argument regarding the manner in which this item was seized. Assignments of error not briefed are considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.
For the reasons cited above, this entire assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 59, 62, AND 76:
In these assignments of error, defendant contends the trial court erred in admitting into evidence a piece of paper on which the words "Vera Braud" and "November 23, 1982" had been typed several times with different typewriters. Defendant also contends in assignment of error number 76 that the trial court erred in admitting a secretary from the district attorney's office as an expert witness.
The record reveals that the secretary was not admitted as an expert. In any event, assignment of error number 76 was not briefed and is therefore considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
The secretary testified that she typed "November 23,1982" and "Vera Braud" on a piece of paper using the typewriter obtained from defendant's vehicle. This information had been typed on the forged check. She then typed the same information using other typewriters in the district attorney's office. This piece of paper was introduced into evidence.
Defendant contends that the typewriter seized in his vehicle was fitted with a cloth ribbon while all of the machines in the district attorney's office were fitted with plastic ribbons which have a substantially different imprint. This, he contends, had *141 the effect of creating an impermissible appearance of similarity between the type on the check and that made by the typewriter seized from his vehicle.
As previously noted, no attempt was made to qualify the secretary as an expert witness, nor was any attempt made by the state to introduce the paper with the typed information as conclusive evidence that the print on the forged check came from the typewriter found in defendant's car. In fact, there was testimony that the check and typewriter were not submitted to the FBI for testing because it was felt that there was not a sufficient amount of typing on the check for a comparison to be made. Apparently, the state introduced the paper to show that the typing on the check came from a typewriter with a cloth ribbon and that a typewriter with such a ribbon was found in defendant's car. As the trial judge stated in his reasons for overruling defendant's objection at trial, this was a matter of weight, not admissibility, and it was up to the jury to decide what weight, if any, to give it.
Assuming, arguendo, that the paper was erroneously admitted, we do not believe that it was prejudicial in light of the other evidence against defendant. An error is harmless if there is little likelihood that it would have changed the result. La. C.Cr.P. art. 921; State v. Ferdinand, 441 So.2d 1272 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1233 (La.1984). If any error was committed, it was harmless. Accordingly, these assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 19, 20, 21, 27, AND 108:
In these assignments of error, defendant argues that the trial judge erred because he relied on an inaccurate pre-sentence investigation (PSI) report, and he imposed an excessive sentence.
Defendant argues that the trial judge erred because he relied on a PSI report containing a false statement, viz.that defendant told a probation department officer that he had a $100,000 per year cocaine habit. In his brief, defendant denies he made the statement and "vehemently denies that he [has] a cocaine habit." Further, because defendant was unrepresented at sentencing, he contends he was unaware that he was entitled to make this error known to the court at that time.
This argument is ludicrous, at best. Defendant was unrepresented by choice. Furthermore, at sentencing, the following colloquy occurred:
MR. BORNING: Your Honor, I would request also, Your Honor, if you would state on the record that you are familiar with the facts of the case, that you've taken in consideration my past record and submitted alternate sentencing proposal I submitted to you.
THE COURT: I have considered everything. I thought I stated all that in my reasons.
MR. BORNING: But, had you considered the alternate sentencing proposal I submitted to you?
THE COURT: I've considered everything.
The "alternate sentencing proposal" referred to by defendant is a handwritten document and appears in the record. Therein, defendant writes:
A. [I am] addicted to and/or in imminent danger of becoming addicted to narcotics. Said drug (cocaine) ... is a contributing factor in [the] crime which [I] was convicted of.
B. That [I] was motivated by the desire to provide [myself] with said cocaine and it is required that [I] receives (sic) treatment for said addiction.
At the sentencing hearing, defendant made it clear that he wanted the judge to consider his proposal and the facts set out therein. Far from pointing out any "error" in the PSI, defendant reinforced the truth of the statement he now claims is false by bringing to the judge's attention the alternate sentencing proposal. This portion of these assignments of error is without merit.
*142 Defendant also contends the sentence was excessive because he had no prior criminal record, because the crime was not completed, and because his co-defendant received a lesser sentence (five years at hard labor, sentence reduced to time served, and placed on supervised probation).
Defendant argues that while he was convicted of forgery, the true nature of the offense was theft and this was only an attempted theft of $2000.00 for which the punishment is a $200 fine and/or 1 year in prison. For obvious reasons, this portion of defendant's argument is without merit.
Defendant argues that the trial court erred in imposing a more severe sentence on him than on his co-defendant. This argument is meritless. There is no constitutional or statutory requirement that co-defendants receive equal treatment. State v. Phillips, 448 So.2d 235 (La.App. 1st Cir.1984). Indeed, a trial judge should exercise his sentencing discretion to impose sentences graded according to the individual circumstances of the offense and of the offender. See State v. Sepulvado, 367 So.2d 762 (La.1979).
A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Prados, 404 So.2d 925 (La. 1981); State v. Spencer, 374 So.2d 1195 (La.1979).
An individual convicted of forgery can be sentenced to 10 years in prison and fined $5000.00. LSA-R.S. 14:72. Although defendant received a 10 year sentence, no fine was imposed.
In sentencing defendant, the trial judge noted:
that defendant had a $100,000 per year cocaine habit.
that he was a first felony offender in Louisiana.[2]
that it was the opinion of the Probation Department that should he be placed on probation, he would not maintain stability in terms of residence or employment, which is significant for adequate supervision.
there was an undue risk he would commit similar crimes during any period of probation.
defendant was in need of correctional treatment which could best be provided by commitment to an institution.
this crime was well thought-out and planned.
defendant had to be aware of the serious harm he could have caused to the elderly people he was attempting to victimize.
that the perpetration of this type scam on elderly people is one of the most serious non-violent crimes.
a sentence less than incarceration would deprecate the seriousness of the offense.
In consideration of the above, we find no abuse of the great discretion afforded the trial judge in the imposition of sentences.
These assignments of error lack merit.
In light of the foregoing, we find no fault with the verdict or sentence herein and affirm same.
AFFIRMED.
NOTES
[1] This opinion was designated "Not for Publication", consequently, there is no Southern Reporter cite.
[2] Borning stated that he resided in California. The trial judge noted that the court was unable to obtain records, if any, from out of state.