552 So.2d 1040 (1989)
STATE of Louisiana
v.
Alex J. CABANAS.
No. 88 KA 1726.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
Writ Denied January 5, 1990.
*1041 William R. Campbell, New Orleans, for appellee.
Walter P. Reed, Dist. Atty., Parish of St. Tammany, Roy K. Burns, Jr., and James Looney, Covington, for appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Alex J. Cabanas was charged by bill of information with possession of four hundred grams or more of cocaine, a violation of LSA-R.S. 40:967 C and 40:967 F(3). Defendant pled not guilty and filed a written motion to suppress the seized contraband and inculpatory statements, supplemented by an oral motion to suppress.[1] Following a hearing, the motions to suppress were denied. Thereafter, defendant withdrew his plea of not guilty and pled guilty as charged. Defendant expressly reserved the right to appeal the adverse ruling on the motions to suppress. State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to imprisonment at hard labor for twenty-five years; and the court ordered that fifteen years of the sentence shall not be suspended, deferred or withheld and that, for "at least" fifteen years of the twenty-five year sentence, defendant shall not be eligible for probation or parole.
Defendant brings this appeal, urging as his sole assignment of error that the trial court erred by denying his motions to suppress.[2] *1042 Defendant's argument in regard to this assignment consists of two parts, which (for purposes of our review) we have denominated argument number one and argument number two. Argument number one alleges that, because defendant's detention was illegal, his subsequent consent to search, the physical evidence seized during the search and his inculpatory statements were impermissible fruits of the illegal detention and should have been suppressed. Argument number two alleges that the state failed to prove defendant's inculpatory statements were not made under the influence of inducements. As set forth more fully hereinafter, we find that this case must be remanded to the trial court for a reopened suppression hearing only as to argument number one and that argument number two has no merit.
At the hearing on defendant's motions to suppress, the state presented the testimony of Louisiana State Police Troopers Joe Guthrie, Jr., and Philip Stanford and Louisiana State Police Officer Darryl Graham. Defendant did not present any testimony.
According to Guthrie, on February 13, 1988, at about 3:003:15 a.m., he was operating his moving radar while patrolling the eastbound lanes of I-12. As Guthrie was approaching the I-10, I-12, I-59 split, he detected a light colored "El Camino type" vehicle traveling 73 m.p.h. in one of the westbound lanes with a posted speed limit of 65 m.p.h. Because it was physically impossible for Guthrie to cross the highway median at his location to pursue the speeding vehicle, he radioed Stanford who was patrolling the eastbound lanes behind him. Guthrie informed Stanford of the approaching speeding vehicle.
Stanford testified that Guthrie notified him at about 3:00 a.m. that the next approaching vehicle had been traveling at 73 m.p.h. In response, Stanford crossed the highway median and observed a single vehicle, a Chevrolet El Camino truck, westbound in the right lane. Stanford gave pursuit. In what appeared to Stanford to be an effort to elude him, defendant exited 1-12 onto U.S. Highway 11, where Stanford stopped the El Camino defendant was driving.
After stopping the El Camino, Stanford told defendant to exit the vehicle and to bring his driver's license and the vehicle's registration with him. Defendant exited the vehicle with his driver's license and a packet which contained the registration. According to Stanford, it took them "time" to sift through various papers in the packet and locate the registration. The record reflects that the El Camino bore a Florida license plate. Stanford asked defendant if the El Camino belonged to him. Defendant replied in the negative. Stanford then asked defendant who owned the El Camino, and defendant could not give him the name of the owner. Stanford then asked defendant where he was going and who was his employer. In response to Stanford's inquiry as to defendant's destination, defendant gave two different answers. Initially, defendant stated that he was going to Baton Rouge. According to Stanford, the highway on which defendant was travelling (when stopped) would have led to Baton Rouge. In his second answer, defendant stated that he was going to New Orleans. However, Stanford testified that defendant had passed the exit leading to New Orleans; and, thus, Stanford concluded that defendant had given him evasive answers. Stanford had particular experience in the recovery of stolen vehicles, having led the state in the recovery of such vehicles for two years.
Suspecting that defendant might have stolen the El Camino, Stanford returned to his police unit and requested a vehicle registration check and a stolen vehicle check of the El Camino. Upon making his request, Stanford was advised of a computer problem which rendered access to the requested information temporarily unavailable. Stanford testified that, in instances of such computer problems, it sometimes *1043 takes twenty-five to thirty minutes or as little as approximately five minutes up to a maximum of about an hour to receive a response. Guthrie, who was later called to the scene by Stanford, testified that he did not remember whether or not the computer was "up or down" on the day in question.
After being told of the computer problem, Stanford returned to defendant's vehicle. At that time, defendant was seated inside the vehicle. Stanford informed defendant of the expected delay occasioned by the computer problem and that defendant would have to continue to wait for the computer response which would be furnished as soon as possible. In the interim, Stanford was still actively trying to pursue completing a citation for defendant's speeding violation and conferring with defendant. While checking the serial number which was visible through the windshield of the El Camino against a corresponding number appearing on the registration, Stanford determined the numbers matched; and, apparently, it was about that time that Stanford smelled a strong odor of fabric softener. Based on Stanford's experience, he knew that a heavy odor of fabric softener is sometimes used to mask illegal drugs in order to thwart detection by drug detector dogs. Upon smelling the odor of fabric softener, Stanford's suspicions increased; and he then summoned Guthrie to come to the scene in order that he could confer with Guthrie.
In response to Stanford's request, Guthrie went to the scene of the stop. According to Guthrie, he arrived there about five to ten minutes after he had notified Stanford of the approach of defendant's speeding vehicle. Stanford testified that, when Guthrie came to the scene of the stop, Guthrie "stayed back." Stanford further testified that, after he had conferred with Guthrie, they thought they had "articulable reason[s]" to ask for defendant's permission to search the El Camino. Stanford articulated his reasons for not allowing defendant to leave the scene (after the issuance of a speeding citation) and for asking for defendant's consent to search the El Camino, as follows. The El Camino did not belong to defendant, and defendant did know the name of its owner. The weather was very cold with a temperature of 38 degrees. Defendant was wearing a "real light" jacket and a "real light" shirt, and perspiration was "streaming down" defendant's face. Stanford was wearing a heavy jacket and was cold. Defendant had been evasive about his destination in responding to Stanford's questions. Additionally, Stanford had detected a strong odor of fabric softener about defendant's person and the El Camino; and he knew from his own experience that fabric softener was used to mask illegal drugs. On the basis of the foregoing reasons, Stanford suspected defendant had committed theft of the El Camino and/or a violation of the Uniform Controlled Dangerous Substances Law by having narcotics in the El Camino.
Guthrie testified that he and Stanford had conferred at the scene of the stop and that, at that time, Stanford had advised him of his suspicions concerning defendant. Guthrie gave testimony (as to the suspicions Stanford had disclosed to him when the two of them had conferred) which corroborated Stanford's testimony in regard to defendant's statements about his destination as well as Stanford's testimony that defendant was unable to furnish the name of the owner of the El Camino. Guthrie also personally observed at the scene of the stop that defendant was nervous, shaking and sweating profusely in the cold weather. Guthrie testified that Stanford had advised him that he had smelled an "overpowering" odor of fabric softener coming from the El Camino and defendant's person. Guthrie later smelled the same odor when he walked up to the El Camino to search it pursuant to defendant's consent.
In reference to defendant's consent to search the El Camino, Stanford testified that he did not request defendant's consent "verbally." Instead, Stanford explained that he used the standard state police consent to search form. First, he read the contents of the form to defendant. Defendant then stated that he wanted to read the form himself. Stanford handed the form to defendant, while defendant was seated in the El Camino. Defendant looked the *1044 form over, read it and then signed it. Stanford did not think Guthrie was in a position to hear what was being said in regard to the consent form; but, according to Stanford, Guthrie was about fifteen feet away observing him obtain defendant's consent at the door to the El Camino. The state introduced into evidence a photocopy of the signed consent to search form, state exhibit S-1. Consistent with the content of the form itself, Stanford testified that he advised defendant that he could refuse to consent to the search. Guthrie testified that he did not hear Stanford tell defendant that he could refuse to sign the form but that Stanford had read the form to defendant and the form includes advice as to refusing consent to a search.
After obtaining defendant's consent to search the El Camino, Stanford had defendant walk to the rear of the vehicle with him where they remained while Guthrie conducted the search of the vehicle. In conducting the search, Guthrie noticed that the vehicle's spare tire was behind the truck seats instead of being inside the spare tire compartment. In the spare tire compartment, Guthrie found large garbage bags full of some "brick-like" objects. He opened one of the bags; and, at that time, a couple of "kilo-size" packages fell out. He opened one of the packages which was filled with a white powder. He advised Stanford that it appeared they had found a large amount of suspected cocaine in the vehicle. Guthrie conducted a field test of the substance which tested positive for cocaine.
Defendant was then placed under arrest and advised of his constitutional rights by Guthrie. Narcotics agents were called to the scene. Defendant, the El Camino and the contraband were transported to State Police Troop L where defendant made inculpatory statements after again being advised of his constitutional rights.
Stanford testified that it takes about five to ten minutes to complete a traffic citation for speeding. In his testimony, Stanford did not state when he had completed the citation, but he did state that it had been filled out before the drugs were found. Guthrie testified that he "believe[d]" that the speeding citation had been issued immediately before defendant consented to the search, but he stated that he did not know the exact time it was issued. According to Guthrie, defendant signed the consent to search form about seven to ten minutes after he arrived at the scene of the stop. Stanford testified that about twenty-five to thirty minutes elapsed from the time of the stop until defendant consented to the search. Stanford further testified that, at the time of the search, the computer had not yet "come up" and that it was later determined the vehicle had not been reported as stolen.
ARGUMENT NUMBER ONE:
Defendant argues that, at least conceptually, he was detained by the police twice. He concedes that the initial stop of his vehicle for a speeding violation was a brief permitted detention of one suspected of a traffic violation. However, defendant asserts that the limits of that permissible traffic detention were exceeded and, thus, what constituted an initial legal detention was extended or converted into a "second detention" which was illegal. Defendant argues that this "second detention" actually constituted an arrest; but, in any event, the "second detention" was neither supported by probable cause for an arrest nor reasonable suspicion for an investigatory stop. Defendant submits that the facts of the instant case are very similar to those found in State v. Bunnell, 517 So.2d 439 (La.App. 1st Cir.1987), which were held to constitute an illegal detention and tainted consent to search. Defendant concludes that, because the "second detention" was illegal, his consent to search, the physical evidence seized during the search and his inculpatory statements are impermissible fruits of the illegal detention and must be suppressed.
The distinction between an arrest and an investigatory stop is crucial in many cases, for an arrest can be made only on probable cause, while a stop is proper under the more relaxed "reasonable suspicion" standard of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). State v. Flowers, *1045 441 So.2d 707, 713 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330, 1333 (La.1982). However, an investigatory stop is a complete restriction on liberty of movement for a time. A stopping for investigation is not a lesser intrusion because the restriction of movement is incomplete, but rather because it is briefer than an arrest. State v. Merchant, 490 So.2d 336, 340 (La. App. 1st Cir.), writ denied, 496 So.2d 326 (La.1986). It is the circumstances of each case which determine the nature of the detention. State v. Borning, 477 So.2d 134, 139 (La.App. 1st Cir.1985), writ denied, 481 So.2d 1330 (La.), cert. denied, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986).
LSA-C.Cr.P. art. 215.1 authorizes a law enforcement officer to make an investigatory stop when he "reasonably suspects" that a person is committing, has committed, or is about to commit an offense. Inherent in the officer's right to stop an individual and to demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify information given or to obtain information independently of his cooperation. State v. Fauria, 393 So.2d 688, 690 (La. 1981).
The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances, [footnote omitted] 3 W. LaFave, Search and Seizure § 9.2(f), p. 38 quoting from State v. Watson, 165 Conn. 577, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1977, 40 L.Ed.2d 311 (1974).
In U.S. v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the Supreme Court recognized that an investigatory stop which continues indefinitely will at some point no longer be justified as an investigatory stop. However, according to Sharpe, as much as a "bright line" rule would be desirable in evaluating the reasonableness of an investigative detention, common sense and ordinary human experience must govern over rigid criteria. 105 S.Ct. at 1575. In reviewing the length of a detention, it is appropriate to examine whether or not the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. U.S. v. Sharpe, 105 S.Ct. at 1575; State v. Borning, 477 So.2d at 139; State v. Thompson, 543 So.2d 1077, 1081 (La.App. 2d Cir.1989).
In the instant case, Guthrie stated that at about 3:00-3:15 a.m. he detected defendant's speeding vehicle and notified Stanford of its approach. Stanford testified that he was so notified at about 3:00 a.m. However, no evidence was introduced as to the exact time Stanford stopped defendant's vehicle. Guthrie testified that he went to the location of the stop about five to ten minutes after he notified Stanford of the approach of defendant's speeding vehicle. According to Guthrie, defendant signed the consent to search form about seven to ten minutes after he went to the scene of the stop. Stanford testified that approximately twenty to twenty-five minutes had expired from the time of the inception of the stop until defendant gave his consent to search. Neither officer testified as to the time defendant consented to the search. State exhibit S-1, the consent to search form, does bear the time 3:30 a.m. However, no evidence was introduced as to when the search was concluded and when Guthrie informed defendant that he was under arrest. Thus, the evidence introduced at the suppression hearing did not adequately establish the duration of the alleged illegal detention; and, as a result thereof, there is a hiatus in the record which renders it impossible for this Court to determine the duration of defendant's detention. Because a determination of the duration of defendant's detention is crucial *1046 to the resolution of the merits of defendant's argument number one, we are unable to review the merits of that argument. The incompleteness of the record could probably be eliminated by another hearing on the motions to suppress. See e.g. State v. Kennedy, 438 So.2d 210, 212 (La.1983); State v. Simmons, 328 So.2d 149, 153 (La. 1976).
We find appropriate the procedure of remand for a reopened hearing on the motions to suppress. Accordingly, we remand this case for the trial court to receive, at the reopened hearing, evidence relevant to the duration of defendant's detention. If the trial court finds, in light of any new evidence introduced at the reopened hearing and the evidence previously introduced, that the seized physical evidence and/or defendant's inculpatory statements were inadmissible based on defendant's argument number one, it must afford defendant an opportunity to withdraw his guilty plea. Otherwise, we reserve to defendant the right to timely appeal any adverse ruling in regard to argument number one after the imposition of a new sentence, as discussed below. In the absence of such a timely appeal, the present conditional affirmance of defendant's conviction becomes absolute. Cf. State v. Kennedy, 438 So.2d at 212.
ARGUMENT NUMBER TWO:
In addition to his allegation in argument number one that his inculpatory statements were tainted by the alleged illegality of his detention, defendant argues that the state failed to prove that his inculpatory statements were not the result of inducements. Defendant made only the foregoing general allegation rather than any specific allegation of inducement, and the record fails to reveal that defendant made any such allegation (general or specific) at the suppression hearing. Because this argument (which we denominated argument number two) is a separate argument not dependent upon a resolution of defendant's argument number one, we have reviewed it and have concluded it is totally without merit.
The record reflects that the inculpatory statements at issue were made at the State Police Troop L narcotics office where defendant had been transported after he was taken into custody. After defendant was advised of his constitutional rights at least twice and had conferred with his attorney, he made inculpatory statements in the presence of his attorney and Officer Darryl Graham. The only evidence introduced at the suppression hearing relative to inducements consisted of Officer Graham's testimony. In that regard, Graham unequivocally stated that defendant was not threatened or coerced in any way to make his statements and defendant was not offered any inducement for his statements. Hence, the evidence introduced by the state clearly refuted defendant's contention that the state failed to prove his statements had not been made under the influence of inducements.

PATENT ERROR
Notwithstanding that defendant's sentence may have been negotiated pursuant to a plea bargain, in imposing sentence under the applicable penalty provisions of LSA-R.S. 40:967 F(3) and 40:967 G(1), the trial court imposed an illegal, indeterminate sentence. The court is required to impose a determinate sentence. LSA-C.Cr.P. art. 879. In the instant case, the trial court sentenced defendant to twenty-five years at hard labor; and the trial court made the sentence subject to two provisos. The first provides that fifteen of the twenty-five years shall not be suspended, deferred or withheld, and the second provides that for "at least" fifteen years of the twenty-five year sentence defendant shall not be eligible for probation or parole. The illegality of the sentence results solely from the second proviso which gives no basis for determination of when defendant might be eligible for probation or parole, since that proviso fixes no maximum for the number of years to be served without eligibility. State v. Orgeron, 512 So.2d 467, 471 (La. App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988).
We note the trial court did not levy a fine, which is mandatory under the provisions of LSA-R.S. 40:967 F(2). Since this is an error favorable to defendant and the *1047 state has not complained that the sentence is illegally lenient, the court can take no action pursuant to Louisiana Code of Criminal Procedure Articles 882 and 920. Moreover, the sentence imposed appears to have been negotiated pursuant to a plea bargain. State v. Garcia, 519 So.2d 788, 790 n. 3 (La.App. 1st Cir.1987), writ denied sub nom, 530 So.2d 85 (La.1988).
Regardless of whether or not the sentence was negotiated pursuant to a plea bargain, this matter must be remanded to the trial court for resentencing to correct the illegal sentence in a manner not inconsistent with the views expressed herein. If the sentence was a negotiated sentence, the trial court's determination of the maximum number of years to be served without eligibility must be reconciled with the plea agreement, if possible; and, if such a reconciliation is impossible, defendant must be given an opportunity to withdraw his guilty plea. Therefore, the sentence must be vacated and this matter remanded for resentencing.
CONVICTION CONDITIONALLY AFFIRMED; SENTENCE VACATED; AND REMANDED FOR REOPENING SUPPRESSION HEARING AND RESENTENCING.
NOTES
[1] Defendant filed a written motion to suppress evidence prior to the suppression hearing. Therein, defendant contended that his constitutional rights had been violated because evidence to be used against him had been unlawfully and illegally obtained. In that regard, defendant stated in his motion that the evidence "whether physical evidence or any form of statement or confession, was not seized or obtained incidental to a valid arrest and/or search" and that the evidence "was seized or obtained as the result of [an] unlawful search without a valid warrant and without probable cause."

During the suppression hearing, the prosecutor informed the Court that a motion to suppress defendant's inculpatory statements had not been filed because defendant had not yet been notified of the statements through discovery; and the prosecutor requested that the Court permit defendant to make a motion to suppress the statements. The court agreed to that request. The record fails to reveal that any additional written motion to suppress was filed with the Court. However, defense counsel stated that he thought defendant's statements were obtained by intimidation.
[2] In a second assignment of error, defendant makes a general request, without alleging any specific error, that this Court examine the record for errors patent. Such a request serves no purpose and is totally unnecessary, since this Court routinely examines all criminal appellate records for errors patent in accordance with LSA-C.Cr.P. art. 920(2).