594 So.2d 404 (1991)
STATE of Louisiana
v.
Alex J. CABANAS.
No. KA 90 1913.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
Writ Denied May 15, 1992.
William R. Campbell, Jr., New Orleans, John J. Williams, Jr., Asst. Dist. Atty. Covington, La. for the State.
*405 Roy K. Burns, Jr. Covington, for defendant.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
Alex J. Cabanas was charged by bill of information with possession of four hundred grams or more of cocaine, a violation of LSA-R.S. 40:967 C and 40:967 F(3) (redesignated F(1)(c) by 1989 La.Acts, No. 369, § 1). Defendant pled not guilty. Following an August 12, 1988, hearing (first hearing), the district court denied defendant's motions to suppress the seized contraband and inculpatory statements. Defendant then withdrew his plea of not guilty and pled guilty as charged, expressly reserving his right to appeal the adverse ruling on the motions. State v. Crosby, 338 So.2d 584 (La.1976).
On appeal to this Court, defendant urged in a single assignment of error that the district court erred by denying his motions to suppress. State v. Cabanas, 552 So.2d 1040 (La.App. 1st Cir.1989), writ denied, 556 So.2d 41 (La.1990). In addressing that assignment, we noted that defendant's argument consisted of two parts, which (for purposes of review) we denominated argument number one and argument number two. Argument number one alleged that, because defendant's detention was illegal, his subsequent consent to search, the physical evidence seized during the search and his inculpatory statements were impermissible fruits of the illegal detention and should have been suppressed. Argument number two alleged that the state failed to prove defendant's inculpatory statements were not made under the influence of inducements.
In conditionally affirming defendant's conviction, this Court found no merit in defendant's argument number two. Id. at 1046. However, in regard to defendant's argument number one, we found it appropriate to remand the case to the district court for a reopened suppression hearing because of a hiatus in the record, i.e., the evidence introduced at the suppression hearing failed to adequately establish the duration of the alleged illegal detention. Id. at 1045-46. Additionally, we found as patent error that the sentence imposed by the district court constituted an illegal, indeterminate sentence; accordingly, we vacated defendant's sentence with instructions to the district court for resentencing defendant on remand of the case. Id. at 1046-47.
On remand, the district court held a reopened suppression hearing on April 23, 1990. The court took the matter under advisement and, later, denied the motion to suppress the contraband and inculpatory statements, in effect finding no merit to defendant's argument number one. Subsequently, the district court resentenced defendant to imprisonment at hard labor for a term of twenty-five years, without benefit of probation, parole or suspension of sentence but with credit for all time previously served.[1] In this appeal, defendant claims in a single assignment of error that the district court's ruling on remand, denying the motion to suppress, was erroneous.
At the first hearing, the state presented the testimony of Louisiana State Police Troopers Joe Guthrie, Jr. and Philip Stanford, and Louisiana State Police Officer Darryl Graham. At the reopened hearing, Stanford was the state's only witness. Defendant did not present any testimony at either hearing.
As supplemented by the evidence introduced at the reopened hearing, the record reveals the following facts: At about 3:00 a.m. on February 13, 1988, Guthrie was operating his moving radar while patrolling the eastbound lanes of I-12. As Guthrie approached the I-10, I-12, I-59 split, he detected a light colored "El Camino type" vehicle traveling 73 m.p.h. in one of the westbound lanes with a posted speed limit of 65 m.p.h. Because it was physically *406 impossible for Guthrie to cross the highway median at his location to pursue the speeding vehicle, he radioed Stanford, who was patrolling the eastbound lanes behind him. Guthrie informed Stanford of the approaching speeding vehicle.
In response, Stanford crossed the highway median and observed a single vehicle, a Chevrolet El Camino truck, westbound in the right lane. Stanford gave pursuit. In what appeared to Stanford to be an effort to elude him, defendant exited I-12 onto U.S. Highway 11, where Stanford stopped the El Camino driven by defendant at about 3:10 a.m.
Stanford told defendant to exit the vehicle and to bring his driver's license and the vehicle's registration with him. Defendant exited the vehicle with his driver's license and a packet which contained the registration. According to Stanford, it took "time" to sift through various papers in the packet and locate the registration. The driver's license defendant produced was a valid Florida license and the El Camino bore a Florida license plate. Stanford asked defendant basic information to fill out a traffic citation for defendant's speeding violation, i.e., questions concerning the name of defendant's employer, defendant's intended destination, and who owned the El Camino. Defendant responded that the vehicle belonged to a friend; but, when Stanford asked defendant the friend's name, defendant could not tell him the individual's name.
Defendant gave two different answers in response to Stanford's inquiry about his destination. Initially, defendant stated that he was going to Baton Rouge. According to Stanford, the highway on which defendant was travelling (when stopped) led to Baton Rouge. In his second answer, defendant stated that he was going to New Orleans. However, Stanford testified that defendant passed the exit leading to New Orleans. Thus, Stanford concluded that defendant had given him evasive answers.
Stanford had particular experience in the recovery of stolen vehicles, having led the state in the recovery of such vehicles for two years. He suspected that defendant might have stolen the El Camino. Stanford returned to his police unit and, at 3:14 a.m., requested a vehicle registration check and a stolen vehicle check of the El Camino. He was advised of a computer problem which rendered access to the requested information temporarily unavailable.
Stanford returned to defendant's vehicle where defendant sat. He informed defendant of the expected delay occasioned by the computer problem and that defendant would have to continue to wait for the computer response which would be furnished as soon as possible. In the interim, Stanford conferred with defendant, trying to complete the citation for defendant's speeding violation. Stanford checked the serial number which was visible through the windshield of the El Camino against a corresponding number appearing on the registration and determined the numbers matched. About that time, Stanford smelled a strong odor of fabric softener. Based on Stanford's experience, he knew that a heavy odor of fabric softener is sometimes used to mask illegal drugs in order to thwart detection by drug detector dogs. Stanford's suspicions increased and he summoned Guthrie to the scene for a conference.
Guthrie arrived at the scene about five minutes after the stop. Stanford testified that, after he conferred with Guthrie, they thought they had "articulable reason[s]" to ask for defendant's permission to search the El Camino.
Stanford testified that defendant's consent to search the El Camino was obtained at 3:30 a.m., the time stated on State Exhibit S-1, the photocopy of the consent to search form. Stanford explained that he used the standard state police consent to search form to obtain defendant's consent to search. First, he read the contents of the form to defendant. Defendant then stated that he wanted to read the form himself. Stanford handed the form to defendant, who was seated in the El Camino. Defendant looked the form over, read it and signed it. Stanford did not think Guthrie was in a position to hear what was being said in regard to the consent form; *407 but, according to Stanford, Guthrie was about fifteen feet away observing him obtain defendant's consent at the door of the El Camino. Consistent with the content of the form itself, Stanford testified that he advised defendant that he could refuse to consent to the search. Guthrie testified that he did not hear Stanford tell defendant that he could refuse to sign the form but that Stanford read the form to defendant and the form includes advice on refusing consent to a search.
Stanford testified that, immediately after defendant's consent to search was obtained, Guthrie began the search of the El Camino. Guthrie noticed that the vehicle's spare tire was behind the truck seats instead of being inside the spare tire compartment. In the spare tire compartment, Guthrie found large garbage bags full of some "brick-like" objects. He opened one of the bags and a couple of "kilo-size" packages fell out. He opened one of the packages which was filled with a white powder. He advised Stanford that it appeared they had found a large amount of suspected cocaine in the vehicle. Guthrie conducted a field test of the substance, which tested positively for cocaine.
Immediately after the contraband was found, defendant was placed under arrest and advised of his constitutional rights. After securing defendant in Stanford's police unit, the officers went back to the El Camino and determined that there were about fifty-five of the "kilo-size" packages in the car. At 3:50 a.m., narcotics agents were called to the scene. Defendant, the El Camino and the contraband were transported to State Police Troop L, where defendant made inculpatory statements after again being advised of his constitutional rights.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment, defendant again presents the argument which we denominated ARGUMENT NUMBER ONE in defendant's original appeal and which formed the basis of our remand of this case for the taking of additional evidence. Defendant concedes that the initial stop of the vehicle he was driving was a brief, permitted detention because of the traffic (speeding) violation. However, he argues that his detention after 3:19 a.m., "second detention," constituted an illegal detention amounting to an arrest. Defendant asserts that the detention after 3:19 a.m. was neither supported by probable cause for an arrest nor reasonable suspicion for an investigatory stop.[2] Defendant concludes that, because *408 the "second detention" was illegal, his consent to search, the physical evidence seized during the search and his inculpatory statements are impermissible fruits of the illegal detention and must be suppressed.
In his supplemental brief defendant makes an additional argument, citing several alleged inconsistencies between the testimony given by Guthrie and Stanford, that his conviction should be reversed because the evidence was insufficient under the test for determining the sufficiency of evidence set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This argument is without merit. Defendant waived his right to trial and pled guilty as charged. A guilty plea by its nature admits factual guilt and relieves the state of the necessity to prove it by a contested trial. State v. Bourgeois, 406 So.2d 550, 552 (La.1981). This court will not speculate upon the content of the evidence the state would have produced at a trial for the instant offense if defendant had not admitted factual guilt. By entering the plea of guilty, defendant waived any right to contest the sufficiency of the state's proof. State v. Fabre, 525 So.2d 1222, 1227 (La.App. 1st Cir.), writ denied, 532 So.2d 148 (La.1988). Additionally, in reviewing whether or not the district court's ruling denying defendant's motion to suppress was correct, we must give great weight to the district court's conclusions on credibility of the witnesses who testified at the suppression hearings. In the instant case, we find no error in the district court's credibility determinations. See State v. Keller, 403 So.2d 693, 696 (La.1981). In a recent case concerning an alleged illegal detention, we stated:
The distinction between an arrest and an investigatory stop is crucial in many cases, for an arrest can be made only on probable cause, while a stop is proper under the more relaxed "reasonable suspicion" standard of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La.1982). However, an investigatory stop is a complete restriction on liberty of movement for a time. A stopping for investigation is not a lesser intrusion because the restriction of movement is incomplete, but rather because it is briefer than an arrest. State v. Merchant, 490 So.2d 336 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La.1986). It is the circumstances of each case which determine the nature of the detention. State v. Borning, 477 So.2d 134 (La.App. 1st Cir.1985), writ denied, 481 So.2d 1330 (La.1986), cert. denied, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986).
State v. Vincelli, 555 So.2d 21, 24 (La.App. 1st Cir.1989).
Reasonable cause, the requisite level of suspicion for an investigatory detention, is something less than the probable cause level of suspicion required for an arrest and must be determined under the facts of each case. The right to make an investigatory stop and question the particular individual detained must be based on reasonable cause to believe that he has been, is or is about to be engaged in criminal conduct. State v. Bracken, 506 So.2d 807, 811 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). The totality of the circumstances must be considered in determining whether or not reasonable cause exists. State v. Payne, 489 So.2d 1289, 1291-92 (La.App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986). Inherent in the officer's right to stop an individual and to demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify information given or to obtain information independently of his cooperation. State v. Fauria, 393 So.2d 688, 690 (La.1981). "The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop *409 may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances." [footnote omitted] 3 W. LaFave, Search and Seizure § 9.2(f), p. 381 (1987) (quoting from State v. Watson, 165 Conn. 577, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1977, 40 L.Ed.2d 311 (1974)).
In United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the Supreme Court recognized that an investigatory stop which continues indefinitely will at some point no longer be justified as an investigatory stop. However, according to Sharpe, as much as a "bright line" rule would be desirable in evaluating the reasonableness of an investigative detention, common sense and ordinary human experience must govern over rigid criteria. United States v. Sharpe, 470 U.S. at 685, 105 S.Ct. at 1575. In reviewing the length of a detention, it is appropriate to examine whether or not the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. Id.
Defendant contends that the instant case is "on all fours with" United States v. Recalde, 761 F.2d 1448 (10th Cir.1985), and State v. Bunnell, 517 So.2d 439 (La.App. 1st Cir.1987). We disagree with defendant's contention.
Although we do not quarrel with the holding in Recalde or in Bunnell, defendant's reliance on those cases is misplaced. In Recalde, an initial lawful investigatory stop for speeding escalated to the level of an arrest without probable cause. In Bunnell, we held that the permissible limits of a lawful investigatory stop, initiated by a stop for a speeding offense, were exceeded when the defendant was further detained without arousal of further suspicion of the police. Unlike those cases, this case involves an initial lawful investigatory stop of defendant for speeding, during which Stanford's further suspicions of defendant's involvement in criminal activity (i.e., theft of the vehicle and/or a violation of the Uniform Controlled Dangerous Substances Law) were aroused. Stanford articulated his further suspicions at the suppression hearings as follows: The El Camino did not belong to defendant, and defendant did not know the name of its owner. The weather was very cold with a temperature of 38 degrees. Defendant was wearing a "real light" jacket and a "real light" shirt, and perspiration was "streaming down" defendant's face. Stanford was wearing a heavy jacket and was cold. Defendant was evasive about his destination in responding to questions. Additionally, Stanford detected a strong odor of fabric softener about defendant's person and the El Camino. He knew from his own experience that fabric softener was used to mask illegal drugs. For these reasons, Stanford suspected that the El Camino was stolen and contained illegal drugs.
Guthrie testified that he and Stanford conferred at the scene of the stop and Stanford advised him at that time of his suspicions concerning defendant. Guthrie's testimony concerning Stanford's suspicions corroborated Stanford's testimony regarding defendant's statements about his destination and defendant's inability to furnish the name of the owner of the El Camino. Guthrie also personally observed at the scene of the stop that defendant was nervous, shaking and sweating profusely in the cold weather. Guthrie testified that Stanford advised him that he smelled an "overpowering" odor of fabric softener coming from the El Camino and defendant's person. Guthrie later smelled the same odor when he walked up to the El Camino to search it pursuant to defendant's consent.
We conclude that these articulated facts, within the knowledge of Stanford and Guthrie, aroused these officers' further suspicions of defendant's involvement in criminal conduct amounting to reasonable cause justifying extension of the initial investigatory stop and enlarging its scope to meet their further suspicions.
The initial stop occurred at about 3:10 a.m. The consent to search form was executed twenty minutes later at 3:30 a.m. *410 The search immediately followed execution of the form, and within thirty seconds after the search began, Guthrie found the contraband. Defendant was immediately placed under arrest. Although defendant was not free to leave, he was being detained only temporarily by an investigatory stop (supported by reasonable cause) before being placed under arrest after the discovery of the contraband. Defendant was not transported from the scene before the discovery of the contraband. The record does not otherwise indicate that, at any time prior to the discovery of the contraband, there was any intent by the officers to effect an extended restraint on defendant's liberty. See State v. Walters, 464 So.2d 1052, 1056-57 (La.App. 1st Cir. 1985).
We find that Stanford and Guthrie diligently pursued their investigation in a manner that was likely to quickly confirm or dispel their suspicions. Under these circumstances, the detention was reasonable as to cause, method, and duration. See State v. Fauria, 393 So.2d at 690; State v. Thompson, 543 So.2d 1077, 1082 (La.App. 2nd Cir.1989).
The evidence introduced in this case shows that defendant freely and voluntarily consented to the search of the vehicle he was driving. Because the search conducted pursuant to that consent was not preceded by an impermissible seizure of his person, the consent to search, the search, and the seizure of the contraband were lawful and free of any taint of an unlawful detention of defendant. The district court correctly denied defendant's motion to suppress the contraband and defendant's subsequent inculpatory statements which were not fruits of an unlawful detention. Accordingly, defendant's assignment of error (ARGUMENT NUMBER ONE in our earlier opinion) lacks merit. We affirm his conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The record reflects that Judge James R. Strain, Jr., presided over the first hearing, issued the initial ruling denying the motions to suppress, and imposed defendant's original sentence. On remand, Judge Pro Tem Remy Chiasson presided over the reopened hearing, denied the motion to suppress, and resentenced defendant.
[2] In support of his allegation that his detention after 3:19 a.m. was illegal, defendant relies on the district court's factual finding (in the court's July 19, 1990, written reasons for judgment) that Stanford received a response that the El Camino checked out "clean" with the National Crime Information Center at 3:19 a.m. Based on our review of the entire record, we find there is no evidence to support the factual finding, which we conclude is erroneous.

At both the first hearing and the reopened hearing, Stanford acknowledged that he received a negative NCIC response to his computer check request concerning whether or not the El Camino had been reported stolen. At the first hearing, Stanford testified that, at the time of the search, the computer problem had not yet been resolved. He learned later that the El Camino had not been reported as stolen.
A cryptic, handwritten notation on a portion of Defense Exhibit D-1 (the Louisiana State Police radio log dated February 13, 1988) bears the time 3:19 a.m. and the identification number of Stanford's police unit. The district court and defendant apparently concluded that this notation and/or Stanford's testimony at the reopened hearing somehow indicated that the negative NCIC response was received at 3:19 a.m. The record does not support this conclusion. During Stanford's cross-examination at the reopened hearing, defense counsel asked him what the notation meant. Without making any reference to his request for the NCIC check or the response he received to the request, Stanford responded that the notation was in reference to his requesting a check of defendant's criminal history. Although Stanford acknowledged at the reopened hearing that he did receive a negative NCIC response, neither his testimony nor D-1 indicated when that response was received. There is no evidence that the response was received at 3:19 a.m. Stanford's testimony at the first hearing (indicating that the negative NCIC response came after the search) remained unaltered by both the documentary and testimonial evidence presented at the reopened hearing. Moreover, Stanford explained in further testimony at the reopened hearing that, even after he received the negative NCIC response, he continued to believe that the El Camino was stolen because the mere absence of a report to the NCIC of a vehicle being stolen does not mean that a vehicle is in fact not stolen.