758 So.2d 955 (2000)
STATE of Louisiana
v.
Joseph PATTERSON.
No. 98-KA-2643.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 2000.
*957 Harry F. Connick, District Attorney of Orleans Parish, Nicole Barron, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge MOON LANDRIEU, Judge DENNIS R. BAGNERIS, Sr.)
LANDRIEU, Judge.
Defendant Joseph Patterson was charged with possession of cocaine, a violation of La. R.S. 40:967(C), and he pleaded not guilty. On July 15, 1998, the trial court denied defendant's motion to suppress the evidence. Defendant entered a plea of guilty as charged, reserving his right to appeal the trial court's denial of his motion to suppress.[1] After waiving legal delays, the trial court sentenced defendant to time already served and granted defendant's motion for appeal.

FACTS
New Orleans Police Officer Kevin Stamp testified that, on March 14, 1997, he and other task force officers were in the process of arresting two individuals in the 500 block of Josephine Street when defendant approached. The two arrested individuals had been placed in the rear of what presumably was a police vehicle, and defendant attempted to talk with them. Officer Stamp advised defendant to move away from the investigation area, which he did, on a bicycle. Approximately five minutes later, Officer Stamp had to repeat his request that defendant step away. He said defendant made some comments to him at that time, and he said defendant appeared to be in an intoxicated state; he was sweating profusely, his eyes appeared red, and his speech was slurred. Thereafter, defendant twice attempted to talk to the arrested individuals again, and was warned away by two different federal agents on the scene. Officer Stamp said that at that point he turned around and advised defendant that he would be under investigation if he entered the area again. Officer Stamp stated that he was concerned for the officers' safety, because defendant kept coming up behind them, so he interviewed defendant and conducted a *958 pat-down search. Officer Stamp said that during the pat-down search he immediately recognized what, based on his experience, he believed was crack cocaine in defendant's right front pants pocket. After confirming that the substance was crack cocaine, he placed defendant under arrest. On cross examination, Officer Stamp admitted that he did not detect any weapons on defendant's person during the pat-down search, and further admitted that it was a possibility that what he recognized as crack cocaine could have been balled up chewing gum wrappers.

ERRORS PATENT
A review of the record reveals no errors patent.[2]

ASSIGNMENT OF ERROR
By defendant's sole assignment of error, he argues that the trial court erred in denying his motion to suppress the evidence.
The Fourth Amendment to the United States Constitution and Article 1, Sec. 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Searches and seizures outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions.
State v. Stan, 97-2195, p. 5 (La.App. 4 Cir. 10/29/97), 703 So.2d 83, 85, writ denied, 97-2852 (La.2/18/98), 709 So.2d 762 (quoting State v. Basile, 97-1162 (La.App. 4 Cir. 9/24/97), 700 So.2d 1062, writ denied, 97-2503 (La.12/19/97), 706 So.2d 455).
On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. Jones, supra.
Defendant argues that Officer Stamp had no authority to stop and frisk defendant pursuant to La.C.Cr.P. art. 215.1. The State submits that La.C.Cr.P. art. 215.1 is not applicable, as defendant "thrust" himself upon the scene. However, the State offers no other justification for the search and seizure. Instead, the State submits that under La.C.Cr.P. art. 215.1, the police had reasonable suspicion that defendant was committing or about to commit the offense of resisting an officer, a violation of La. R.S. 14:108, assisting escape, a violation of La. R.S. 14:111, or obstruction of justice, a violation of La. R.S. 14:130.1.

The stop
"A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." La.C.Cr.P. art. 215.1 A; State v. Bentley, 97-1552, p. 7 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 410, writ denied, 98-3213 (La.5/7/99), 741 So.2d 27. "Reasonable suspicion" is something less than the probable cause needed for an arrest, and must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144; State v. Smiley, 99-0065, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, 745, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Mitchell, *959 97-2774, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 327.
Officer Stamp did not testify that he believed defendant was or was about to tamper with evidence, influence the testimony of any person in a criminal proceeding, or retaliate against any person in connection with the offense the officers were investigating. Nor did the officer testify that he believed defendant was attempting to assist in the escape of the two arrested subjects. Nor is there any objective evidence to support such claims. The evidence only establishes that defendant was attempting to talk to the two subjects. Thus, defendant could not have been lawfully confronted by Officer Stamp under the reasonable suspicion that he was obstructing justice or assisting in the escape of the two arrested subjects.
La. R.S. 14:108, proscribing resisting an officer, provides in pertinent part that:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
(c) Refusal by the arrested party to give his name and make his identity known to the arresting officer.
(d) Congregation with others on a public street and refusal to move on when ordered by the officer.
Louisiana courts have consistently construed this statute to prohibit conduct that obstructs or interferes with an officer acting in his official capacity while he is attempting to seize property, serve process or make a lawful arrest. State v. Nix, 406 So.2d 1355, 1356 (La.1981); State v. Huguet, 369 So.2d 1331, 1335 (La.1979); State v. Washington, 98-545, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 587, 590; State v. Flanagan, 29,316, p. 4 (La.App. 2 Cir. 4/2/97) 691 So.2d 866, 869. However, "[i]f the officer is not engaged in attempting one of those three things," any behavior by a defendant which interferes with an officer's "investigation" does not constitute resisting an officer. State v. Lindsay, 388 So.2d 781, 783-784 (La.1980); Washington, supra.
Defendant argues that because the other two men had already been arrested and secured in a police vehicle at the time he approached them, the officers were not engaged in attempting to arrest anyone and, therefore, defendant could not have interfered with or obstructed such arrest so as to have resisted an officer. Defendant claims the officers were simply engaged in an "investigation" at the time he presented at the scene. Indeed, Officer Stamp testified that the two other men had already been arrested, and that defendant entered the "area of the investigation" which police had cordoned off. However, Officer Stamp also testified that "during the arrest," after the two arrested subjects had been placed in the vehicle, and while the officers surveyed "the immediate area of the arrest," he turned to check on the vehicle and saw defendant approaching it in an attempt to talk to the arrested subjects. Id.
In Washington, supra, police attempted to detain a drug suspect, who fled down the street. Police apprehended the suspect in front of a residence where three males were sitting on the porch. One of *960 the men on the porch attempted to conceal a weapon at the sight of police. One officer detained and arrested the individual with the weapon. Three other officers ordered the two remaining men to stop and remain where they were on the porch. The two men ignored the order and walked toward the door of the residence. One of those men swallowed small white objects and was detained. The defendant walked into the house, but was detained just inside the doorway and arrested for resisting an officer. A search of the defendant's person incidental to his arrest revealed a bag containing crack cocaine. On appeal, the defendant argued that the officers had no probable cause to arrest him for resisting an officer because his actions did not affect the arrest or seizure of property from the other suspects. The court rejected that notion, finding that the officers had been in the "process" of arresting the other subjects and seizing contraband, and that the defendant's actions interfered with the officers' attempts to perform their duties.
In State v. Brister, 514 So.2d 205 (La. App. 3 Cir.1987), police noticed the defendant slumped in his vehicle, stopped in a traffic lane on a rural state highway. Using the patrol unit's public address system, police ordered the defendant to step out of his vehicle. On the seventh or eighth request, the defendant tried to turn to see who was behind him, and his vehicle rolled down the roadway some ten of fifteen feet. One officer approached the vehicle and again asked the defendant to step out. The defendant used vulgar language, made a motion with his left hand, and began reaching for something between the seats. The officer sprayed the defendant with mace and pulled him from the car. The officer said that defendant, stunned by the mace, resisted being pulled from the car. On appeal, the court found that the officer had merely been conducting an "investigation" of the scene prior to pulling defendant from car and placing him under arrest. The court held that the "[f]ailure to obey an officer's order while he is merely investigating a scene is not resisting an officer." 514 So.2d at 208.
In Nix, supra, police investigating a report of a domestic disturbance involving the defendant and his former mother-in-law at the latter's residence, asked the defendant to drive to a sheriff's office for questioning. As the defendant, in his vehicle, neared the sheriffs office, he suddenly accelerated and fled into Texas. The defendant was eventually apprehended and arrested for resisting an officer. On appeal, the Louisiana Supreme Court found that because the officers were not engaged in attempting to seize property, serve process or make an arrest at the time the defendant fled, he could not be considered as having resisted an officer.
In Huguet, supra, police on patrol stopped to order the defendant and other individuals drinking outside of a bar to go inside or elsewhere. One individual threw a beer bottle at an officer and was arrested for disturbing the peace. The other individuals were arrested on various charges after failing to move on, and the defendant was arrested for resisting an officer. The defendant appealed the denial of his motion to quash the bill of information. On appeal, the Louisiana Supreme Court held that, as there were no facts in the State's bill of particulars showing that the defendant's disobedience of the order to move on obstructed the officers while they were attempting to seize property, serve process or arrest the individual who tossed the beer bottle, the trial court had erred in denying the motion to quash.
The two issues presented by the instant case in relation to the stop are: (1) whether the defendant's actions interfered with the officers or obstructed them; and (2) whether the officers were involved in making a lawful arrest at the time of defendant's actions.
The facts indicate that defendant's actions interfered with the officers' actions. Defendant repeatedly approached two arrested subjects seated in the rear of a *961 police vehicle. While defendant was only observed attempting to talk to the arrested subjects, his actions interfered with the officer's overall arrest operation in that the officers had to focus their attentions on defendant, rather than the arrest scene, to ensure the continued safe custody of both the arrested subjects and themselves.
The actual point an arrest occurs is a technical matter. See La.C.Cr.P. art. 201; State v. Smiley, 99-0065, pp. 3-4 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, 745-746, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651. To hold that a person interferes with or obstructs an officer making a lawful arrest only when the individual acts at the precise moment police take the person into custody, or immediately prior thereto-after officers have probable cause-as suggested by defendant, is a hyper-technical and unrealistic interpretation of the statute.[3] Unlike those cases where officers were simply investigating situations, the officers in the instant case, as in Washington, supra, were engaged in the "process" of arresting the two subjects when defendant foolishly interjected himself into the operation. This is true even though more than five minutes had elapsed between the time the arrested subjects were placed into the police car and the time defendant was actually stopped by Officer Stamp. Accordingly, although Officer Stamp did not state in so many words that he "interviewed" defendant because he believed defendant was interfering with an officer making an arrest, the officer's testimony established that that in fact is what occurred. Officer Stamp had reasonable suspicion to believe that defendant was committing the offense of resisting an officer and was justified in stopping defendant to demand of him his name, address and an explanation of his actions in repeatedly approaching the arrested subjects sitting in the police car.

The Search
If a police officer stops a person whom he reasonably suspects is committing, has committed, or is about to commit a crime, pursuant to art. 215.1 A, and reasonably suspects he is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La.C.Cr.P. art. 215.1 B; State v. Curtis, 96-1408, pp. 2-3 (La. App. 4 Cir. 10/2/96), 681 So.2d 1287, 1289. "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144, (quoting State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082). As noted by this court in State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at *962 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [1968]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.

State v. Hunter, 375 So.2d 99, 101-02 (La.1979) (final citation omitted).
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspect [sic] that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
96-0956 at pp. 7-8, 691 So.2d at 1299.
Officer Stamp did not testify as to any facts from which he could have based a reasonable suspicion that defendant, while being interviewed, with at least two federal agents present, either: (1) presented a danger to Officer Stamp or other officers/agents; and/or (2) possessed a dangerous weapon. The unsupported statement by Officer Stamp that he feared for his and the other officers' safety, standing alone, under these facts and circumstances, is insufficient to justify a search for weapons. See Smiley, 99-0065 at p. 6, 729 So.2d at 747.
As it is clear that defendant was not under arrest at the time of the pat-down search, the search cannot be justified as "a search incidental to a lawful arrest." As Officer Stamp did not indicate in any way that it was his intention to arrest defendant for any violation prior to the discovery of the cocaine, the seizure cannot be justified by the "inevitable discovery doctrine."
Accordingly, because the State failed to meet its burden of proving that the cocaine was lawfully seized from defendant, the trial court erred in denying defendant's motion to suppress.

CONCLUSION
For the foregoing reasons, the judgment of the trial court denying defendant's motion to suppress the evidence is reversed; defendant's conviction and sentence are reversed; and this matter is remanded to the trial court.
REVERSED AND REMANDED.
BYRNES, J., dissents with reasons:
BYRNES, J., dissenting:
I respectfully dissent based on my conclusion that the defendant, Joseph Patterson's motion to suppress was properly denied by the trial court.
*963 I agree with the majority that found that Officer Stamp had reasonable suspicion to believe that Patterson was committing the offense of resisting an officer.
Under La.C.Cr.P. art. 215.1 A, a law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit a crime. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
An investigatory stop, requiring only a reasonable suspicion, is as complete a restriction on the liberty of movement as an arrest; a stopping for investigation is not lesser intrusive because the restriction of movement is incomplete, but rather because it is briefer than an arrest. State v. Vincelli, 555 So.2d 21 (La.App. 1 Cir.1989); State v. Walker, 530 So.2d 1200 (La.App. 2 Cir.1988), writ denied 532 So.2d 763 (La. 1988); State v. Senegal, 95-796 (La.App. 3 Cir. 12/6/95), 664 So.2d 832. Inherent in an officer's right to make an investigatory stop of an individual and to demand his name, address, and explanation of his actions is the right to detain the subject temporarily to verify information given or to obtain information independently of his cooperation. State v. Cabanas, 594 So.2d 404 (La.App. 1 Cir.1991), writ denied 598 So.2d 371 (La.1992); State v. Moncriffe, 522 So.2d 1187 (La.App. 4 Cir.1988).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. Deference should be given to the experience of the police who were present at the time of the incident. State v. Short, supra.
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences *964 and deductions of a trained officer that might well elude an untrained person. Cortez, 499 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' Id." [Emphasis added.]
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need "articulable facts" taking into account the entire picture.
A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur. State v. Poche, 99-0039 (La. App. 4 Cir. 5/5/99), 733 So.2d 730.
In the present case, the majority properly determined that the officer had reasonable suspicion for an investigatory stop of the defendant for resisting an officer. However, the majority concluded that the officer's statement that he feared for his and the other officers' safety, standing alone, under the facts and circumstances, is insufficient to justify a search of weapons.
Officer Stamp also stated that the defendant appeared to be intoxicated. The officer testified that the defendant "appeared in somewhat, in my opinion, an intoxicated state. He was sweating profusely, eyes somewhat read and speech slurred." Officer Stamp explained that the defendant attempted to approach the vehicle, trying to talk to the arrested subjects. Patterson came back repeatedly. Officer Stamp testified that: "... at this time I felt for the officers' safety with him coming up behind us towards the vehicle." Officer Stamp related that: "Many times my back was toward the [defendant]. When I turned around, he was at the vehicle." Officer Stamp articulated three reasons why the defendant appeared to be a threat under the totality of circumstances. The defendant continued to come up behind the officers, repeatedly tried to reach the arrested subjects, and appeared intoxicated. In that situation, the officer could conclude that the defendant could be trying to help the arrested subjects and could have tried to supply them with a weapon. The officer had reason to be apprehensive and was justified in patting down the defendant in a search for weapons. Under the totality of the circumstancesthe whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officer enunciated reasons to justify the pat-down of the defendant for weapons.
Considering that the officers had reasonable suspicion for an investigatory stop and a legal pat-down for weapons, this case would fall within the "plain feel" exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under Dickerson, when a police officer lawfully pats down a suspect's clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be a weapon or contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.
In the present case Officer Stamp testified that: "... during the pat-down search, I believe in his right, front pants pocket I felt what I immediately recognized as crack cocaine. I removed the item from his pocket. It was in fact crack cocaine." Under the totality of circumstances, *965 this evidence was properly seized under the "plain feel" exception. There was no invasion of the defendant's privacy beyond that authorized for the search of a weapon or contraband. The evidence was properly seized.
Accordingly, I would affirm the trial court's denial of Patterson's motion to suppress, and affirm the defendant's conviction and sentence.
NOTES
[1] See State v. Crosby, 338 So.2d 584 (La. 1976).
[2] While defense counsel asserts that the failure to advise defendant of his right to seek post conviction relief as set forth in La.C.Cr.P. art. 930.8 is an error patent, this court has held that this is not an error patent. State v. Jones, 97-2217, p. 3, n. 1 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 392, n. 1.
[3] The statute does specifically proscribe resisting an officer by directing any violence toward or resistance or opposition to the arresting officer "after the arrested party is actually placed under arrest and before he is incarcerated in jail." La. R.S. 14:108 B(1)(b). However, this provision appears to cover, at least as "resistance to" or "opposition to" the arresting officer is concerned, actions by the person arrested, as opposed to a third party. It appears intended to address an arrested person's resistance to continued custody following arrest, prior to being jailed. As defendant in the instant case did not direct any violence toward any officers, La. R.S. 14:108 B(1)(b) is not applicable.