PER CURIAM.
|/The City of Lafayette (City) charged defendant and his daughter, Michelle De-sormeaux, in separate affidavits, with resisting an officer in violation of Lafayette City Ordinance, § 62-66. The ordinance defines the offense, similarly to its state counterpart, LSA-R.S. 14:108, as “the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest.” The City additionally charged Michelle Desormeaux with violation of Lafayette City Ordinance, § 86-5, which prohibits the playing of music in a vehicle at excessive sound levels plainly audible at a distance of 50 feet in any direction. The city court found Ms. Desor-meaux not guilty of violating the sound *478 ordinance, but found both father and daughter guilty as charged of resisting an officer and sentenced each defendant to 30 days in jail. The court suspended the sentences and placed the Desormeauxs on unsupervised probation. The court also fined each defendant $170.00.
| ¿The Desormeauxs appealed their convictions and sentences to the Fifteenth Judicial District Court in accord with the provisions of LSA-R.S. 13:1896(B). That court affirmed as to each defendant and the Desormeauxs thereafter filed separate applications for review in the court of appeal. The third circuit consolidated the applications and affirmed as to Michelle Desormeaux, but reversed her father’s conviction and sentence on grounds of insufficient evidence. City of Lafayette v. Desormeaux, 06-0460 (La.App. 3 Cir. 6/7/06) (Cooks, J. dissenting as to Michelle Desormeaux, but concurring as to Darrell Desormeaux; Pickett, J., concurring as to Michelle Desormeaux, but dissenting as to Darrell Desormeaux.).
This court denied the Desormeauxs’ application for review, City of Lafayette v. Desormeaux, 06-1710 (La.4/27/07), 955 So.2d 675, but granted the City’s application. City of Lafayette v. Desormeaux, 06-1730 (La.4/27/07), 955 So.2d 670. We reverse the judgment of the court of appeal as to Darrell Desormeaux, agreeing with the City that the evidence at trial supported the trial court’s guilty verdict. The trial court found that defendant directly challenged the effort by the police officers to take unquestioned command of the situation after arresting his recalcitrant daughter for traffic violations; he thereby committed the offense of resisting an officer as defined by city and state law.
The arrests of the Desormeauxs stemmed from a traffic stop initiated by Lafayette city police officer Kyle Moreau shortly after midnight on August 24, 2004, when he' stopped Michelle Desormeaux, who was driving a Hummer SUV, for violating the city’s sound ordinance. Officer Moreau’s attention had been drawn to the vehicle when he heard heavy bass tones and loud music spilling out of the opened windows of the vehicle as it passed him in the opposite lane of traffic. The officer initially intended to issue only a citation for the sound violation, and for a second 1 ^traffic offense after he discovered that Ms. Desormeaux did not have her driver’s license in her possession.
At first, Ms. Desormeaux appeared fully cooperative. According to the officer, she apologized for the loud music and informed him that she had left her license with a friend in a nearby club. At the officer’s request, and with one of her passengers taking the wheel of the vehicle, Ms. Desor-meaux relocated to the nearby club in an effort to retrieve her license so that Officer Moreau could identify her properly and issue the citations.
However, the stop quickly escalated into an arrest when Ms. Desormeaux ignored the officer’s repeated instructions to step from her vehicle, informed the officer that she was speaking to her attorney, and then continued to talk with her father, an attorney in Lafayette, on her cellular phone. After Officer Moreau finally got her out of the vehicle, Ms. Desormeaux tried to slip past him and then struggled with him as he attempted to place her in handcuffs. Aided by Corporal Delahoussay, who had arrived on the scene in a back-up capacity, Officer Moreau handcuffed Ms. Desor-meaux and then transported her to the Lafayette Correctional Center.
When Officer Moreau arrived at the Correctional Center, he opened the door of his patrol unit to remove Ms. Desormeaux. The officer immediately discovered that she had slipped out of the handcuffs in a fashion that he could not explain at trial. *479 Before he could give her any instructions, Ms. Desormeaux jumped out of the unit and attempted to squeeze past him and escape. At the moment Officer Moreau restrained her, defendant arrived on the scene and moved rapidly toward his daughter, yelling at the officer and demanding to know why he was arresting her.
Corporal Delahoussaye, who had followed Officer Moreau to the Correctional Center, stepped in front of defendant to cut him off and ordered him to stay back as |4Moreau struggled to recuff Ms. Desor-meaux. The officer finally secured the. handcuffs as both he and Corporal Dela-houssaye warned defendant to stand back. Instead, defendant continued to yell at the officers and even at his own daughter while demanding the reason for her arrest.
Concerned that Corporal Delahoussaye could not restrain defendant for much longer, Officer Moreau turned his attention momentarily away from Ms. Desor-meaux to focus on her father and then turned back to make sure that her hands were still cuffed. However, Ms. Desor-meaux had slipped her left hand out of the cuffs and once more attempted to escape. Officer Moreau restrained her again and placed her on the hood of a patrol unit to recuff her loose hand. Corporal Delahous-saye came to his aid as defendant circled around the patrol unit and moved rapidly toward the officers, approaching within an arm’s length.
At that moment, Narcotics Agent George Crowder, who had observed the events at Moreau’s patrol unit unfold from the steps of the Correctional Center, intervened by grabbing defendant’s arm and warning him that he would be arrested if he did not stay back. When the defendant, who was still upset and yelling, tiled to walk past him towards his daughter, Agent Crowder placed the defendant against the police car. He then turned defendant over to city police officers who placed him under arrest.
• Glenn Armentor, an acquaintance of the defendant, testified for the defense concerning the defendant’s reputation for veracity and non-violence. Michelle Desor-meaux, the defendant’s daughter, denied resisting the officers and claimed that the officers threw her around to make it appear that she was struggling. She also testified that the handcuffs simply slipped off her wrists.
^Defendant testified that when his daughter informed him by phone that the police were attempting to remove her from her vehicle, he instructed her to cooperate with the officers. He then drove to the jail and approached Corporal Delahous-saye, who immediately instructed him to stay back. He identified himself as Michelle’s father and her attorney and asked what was going on. The officers eventually informed him that they were arresting his daughter. He then noticed that his daughter was out of her handcuffs. When the officers slammed her against the hood of a car, the defendant told the officers that their behavior was “brutality.” He was then arrested as he was walking toward the bonding office. According to the defendant, he did not interfere with his daughter’s arrest and further testified that he knew better than to approach the officer who was in the process of handcuffing his daughter.
Portions of the incident were .captured on a small tape recorder taken to the scene of Ms. Desormeaux’s arrest by Corporal Delahoussaye and then given to Officer Moreau before he transported defendant’s daughter to the Correctional Center. The tape was then transferred to a compact disc and introduced at trial. The copy of the recording submitted with defendant’s application is frequently inau *480 dible, but it does capture the chaotic events at the Correctional Center. Defendant can be heard shouting at the officers as he demanded the reasons for his daughter’s arrest even while instructing Ms. Desormeaux to keep quiet. The officers can be heard responding to those demands by ordering defendant to step back from them while they attended to his recalcitrant daughter.
In reasons for judgment delivered extemporaneously from the bench and later reduced to writing, the city judge found that the evidence did not support a finding beyond a reasonable doubt that Ms. Desor-meaux had violated Lafayette’s sound ordinance; it remained unclear from Officer Moreau’s testimony just how far away | /rom her vehicle he was when he heard the loud music. The court accordingly acquitted her of that charge.
However, the court found that Officer Moreau had had probable cause to believe that she had violated the ordinance. The officer was entitled to make a full custodial arrest for the violation, despite the fact that a first violation of the ordinance is punished by fine only, and Lafayette Police Chief Randy Hundley testified that official police policy called for only a citation if the driver has a license and proper identification. The court explicitly relied on the decision in Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (Fourth Amendment does not prohibit the police from making a warrantless arrest for misdemeanor offenses even when they do not involve breaches of the peace.); cf. LSA-C.Cr.P. art. 213(1) (Police officer may make a war-rantless arrest for a misdemeanor offense committed in his presence.); LSA-C.Cr.P. art. 933(4) (A “misdemeanor” offense includes violation of an ordinance providing a penal sanction.). To the extent that Ms. Desormeaux was then “bound and determined to make it as difficult as possible for the Officers to do them jobs,” the court found her guilty of resisting an officer. As for her father, the court observed that it was clear that “the prescription [sic] against resisting arrest of someone else is to prevent the Officers from getting hurt because they might be distracted by someone else.... [W]hat someone cannot do when an Officer is in the process of arresting someone is distract them. And, that is precisely what Mr. Desormeaux did.”
In its brief order reversing that verdict, the court of appeal relied, without discussion, on the decision in State v. Patterson, 98-2643 (La.App. 4 Cm. 3/29/00), 758 So.2d 955. However, that reliance was misplaced. In Patterson, an apparently intoxicated defendant ignored repeated orders by the officers on the scene to step 17away and keep out of the area and persisted in his attempts to converse with two individuals who had been arrested and placed in the back of a patrol unit. The officers finally detained the defendant, searched him, and found cocaine. On defendant’s appeal of his subsequent conviction and sentence for possession of cocaine, the fourth circuit found that the officers had at least reasonable suspicion for an investigatory stop for the offense of resisting an officer under LSA-R.S. 14:108 because defendant’s actions interfered with or obstructed the arrests of the two men in custody in the back of the patrol unit. “While defendant was only observed attempting to talk to the arrested subjects, his actions interfered with the officer’s overall arrest operation in that the officers had to focus them attentions on defendant, rather than the arrest scene, to ensure the continued safe custody of both the arrested subjects and themselves.” Patterson, 98-2643 at 8, 758 So.2d at 961. Patterson specifically rejected the argument that an individual cannot obstruct or interfere with an arrest which has already taken place. *481 “To hold that a person interferes 'with or obstructs an officer making a lawful arrest only when the individual acts at the precise moment police take the person into custody, or immediately prior thereto- — after officers have probable cause — as suggested by defendant, is a hyper-technical and unrealistic interpretation of the statute.” Id. Nevertheless, the court of appeal concluded that the officers did not have an objective basis for suspecting that defendant presented a danger to them and thus lacked a lawful basis for frisking him and then reaching into his pockets to retrieve the cocaine. Patterson, 98-2643 at 11, 758 So.2d at 962.
We disagreed with that aspect of the court of appeal’s decision and reversed accordingly. State v. Patterson, 00-1212 (La.3/28/01), 783 So.2d 1243. This court fully subscribed to the trial court’s premise that the officers had lawfully detained Isdefendant for the offense of resisting an officer. Patterson, 00-1212 at 1, 783 So.2d at 1243-44. (“Respondent’s conduct interfered with the arrests and constituted a violation of La. R.S. 14:108 (resisting an officer) ... [the] gravamen of [which] ... ‘remains the intentional obstruction of an officer acting in his official capacity.’ ”) (quoting State v. Huguet, 369 So.2d 1331, 1334 (La.1979)).
In the present case, the city court explicitly resolved the credibility choice in favor of Officer Moreau and Corporal De-lahoussaye. On that basis, the court found that defendant had repeatedly disobeyed the officers’ orders to step away while they struggled to maintain custody of his daughter on the way to booking in the Correctional Center; he thereby posed a danger to the officers by drawing their attention away from his daughter as she exercised her unusual skill at slipping out of her handcuffs. Cf. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983) (An appellate court may not second guess rational credibility determinations made by the factfinder.). The city court drew on the testimony of Officer Moreau that they were already dealing with Ms. Desor-meaux who was resisting when defendant came into their immediate area and forced them to direct attention toward him rather than dealing with the matter at hand, which was trying to secure the daughter in handcuffs. Although Officer Moreau had already arrested Ms. Desormeaux before transporting her to the Correctional Center,[1] he had not yet fully succeeded in subduing her by the time defendant arrived on the scene. She continued her efforts to escape and to frustrate the officers’ attempts to restrain her by the use of handcuffs. It clearly appeal's from the officers’ testimony that Ms. Desormeaux took advantage of the | ^distraction provided by her father to slip one hand out of the cuffs and to make her third attempt to elude custody.
In making an arrest, for their own safety and that of their suspect, the police may take reasonable steps to assert complete command of the situation. Brendlin v. California, — U.S. -, -, 127 S.Ct. 2400, 2407, 168 L.Ed.2d 132 (2007) (“[A] sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing.”); Michigan v. Summers, 452 U.S. 692, 702-703, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981) (“The risk of harm to both the police and [the persons they de *482 tain] is minimized if the officers routinely exercise unquestioned command of the situation.”); accord State v. Porche, 06-0312, p. 5 (La.11/29/06), 943 So.2d 335, 338 (Trial court erred in granting a motion to suppress because it failed to accord due deference to the need of the police to exercise unquestioned command of the situation while they determined the nature and scope of the criminal activity they had uncovered.). In the present case, viewed in the light most favorable to the prosecution,[2] the evidence supports the verdict of the city court that by interfering with the effort of Officer Moreau and Corporal De-lahoussaye to reestablish custody over his recalcitrant daughter, defendant committed the offense of resisting an officer as defined by state and city law.
Accordingly, the judgment of the court of appeal is reversed as to defendant, his conviction and sentence are reinstated, and this case is remanded to the city court for purposes of rendering that sentence execu-tory.
JkjCOURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.

. See California v. Hodari D., 499 U.S. 621, 624, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991) ("[A]n officer effects an arrest of a person whom he has authority to arrest, by laying his hand on him for the purpose of arresting him, though he may not succeed in stopping and holding him.”). (Internal quotation marks and citation omitted.)

. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (When considering a claim of insufficient evidence, a reviewing court must determine whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.).