FREDERICKA HOMBERG WICKER, Judge.
1 ¡Juvenile-defendant, J.A.J.[1], appeals his adjudication[2] as a delinquent for resisting an officer in violation of La. R.S. 14:108. We find the state presented sufficient evidence to prove that J.A.J.’s refusal to move on when ordered to do so interfered with the detectives’ and federal agents’ detention and arrests of multiple suspects. However, our review of the record reveals that the trial court failed to conduct a disposition[3] hearing as required by La. Ch.C. art. 892.[4] Accordingly, we affirm JAJ.’s adjudication but vacate his disposition and remand this matter to the trial court for a disposition hearing.

PROCEDURAL HISTORY

On July 19, 2012, the St. Charles Parish District Attorney filed a delinquency peti *451 tion in the Twenty-Ninth Judicial District Court[5] charging J.A.J. with resisting an officer in violation of La. R.S. 14:108. J.A.J. denied the allegations against him at his appearance to answer on August 10, 2012. The trial |scourt conducted an adjudication hearing on December 7, 2012. On that date, the trial court adjudicated J.A.J. delinquent as charged and entered a judgment of disposition that J.A.J. be sentenced to six months in a juvenile detention facility; however, the trial judge suspended the sentence and placed J.A.J. on active probation for a period of one year with the St. Charles Parish Juvenile Probation Department. This timely appeal follows.

FACTUAL BACKGROUND

On June 18, 2012, Detectives Robert Calbracie and Michael Wright[6], with the St. Charles Parish Sheriffs Office, assisted Immigration and Customs Enforcement (ICE) agents in an investigation on Bonura Drive in St. Charles Parish. The investigation involved multiple possible illegal immigrants who allegedly returned to the United States after being convicted as felons and previously deported. Detective Wright explained that the detectives and ICE agents chased a number of fleeing suspects on foot; the detectives did not apprehend any of suspects but returned to meet the ICE agents, who captured at least seven or eight individuals. The agents detained the suspects for questioning to confirm their immigration status and made several arrests. Detectives Cal-bracie and Wright assisted the ICE agents by providing security for the scene, which Detective Calbracie described as a relatively large and active investigation.[7]
Detective Calbracie testified that while he assisted the agents in their detention and ongoing arrests of the suspects, he noticed a juvenile with a video camera walk within five to ten feet of the agents and the numerous handcuffed Rsuspects.[8] Detective Calbracie testified that he advised the juvenile that he could record the scene but for his safety, the officers’ safety, and the suspects’ safety, he instructed the juvenile to move “further away.”[9] Although the juvenile walked away, he quickly returned and repositioned himself on the other side of a law enforcement vehicle.[10] Detective Calbracie warned the ju *452 venile not to interfere with their investigation and to “move on.”
Detective Calbracie testified that the juvenile continued to insert himself into the investigation, which he described as “very distracting when you’re trying to watch 15 people and then you got onlookers trying to poke their heads in and keep approaching.” Detective Calbracie explained that from his experience criminals sometimes approach a law enforcement scene to intervene and keep the officers occupied or distracted. Detective Calbracie also testified that he noticed someone, later identified as the juvenile’s mother, “kind of like signaling him to keep coming back.” [11]
Detective Wright testified that he also told the juvenile to step away and warned that if he failed to move on he would be arrested. Detective Wright explained that it is frustrating for a bystander to enter into a detective’s “reactionary gap” — a safe distance in which an officer can observe a threat, decide how to address it, and act upon it.[12] Detective Wright testified that the juvenile closed in on that gap several times, standing within five to six feet of the detectives, and returned multiple times after being warned to move on. Detective Wright further testified that at times he could not see the juvenile as the juvenile | ¡¡circled behind him; he explained that this caused him to divert his attention from the “already convicted dangerous felons” to address the interfering juvenile who continuously distracted the agents and detec-fives from the situation at hand. Detective Calbracie testified that the juvenile refused to comply with the detectives’ warnings to step farther away from the scene and that after at least four warnings, he arrested the juvenile — later identified as J.A.J.

DISCUSSION

In his sole assignment of error, J.A.J. contends that the state presented insufficient evidence against him to support his adjudication for the charged offense of resisting an officer in violation of La. R.S. 14:108.

Standard of Review

In a juvenile delinquency proceeding, the state’s burden of proof is the same as in a criminal.proceeding against an adult — to prove beyond a reasonable doubt every element of the offense alleged in the petition.[13] State in Interest of S.L., 11-883 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 830. In determining the sufficiency of the evidence, the reviewing court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U'.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).'
 Though delinquency proceedings may in many ways mirror criminal proceedings, they are nonetheless civil in nature.[14] State in Interest of R.V., 11-138 *453 (La.App. 5 Cir. 12/13/11), 82 So.3d 402, 408 (citing State ex reí. D.R., 10-0405 | r/La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930). Because juvenile proceedings are not criminal proceedings, the scope of review in Louisiana extends to both law and facts. Id. at 408. “This ‘clearly wrong’ or ‘manifestly erroneous’ standard of review is the same as is applied in other civil cases.” Id.

Law and Analysis

The trial court adjudicated J.A.J. a delinquent for resisting an officer in violation of La. R.S. 14:108. La. R.S. 14:108, in pertinent part, provides:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase “obstruction of’ as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
[[Image here]]
(d) Congregation with others on a public street and refusal to move on when ordered by the officer.
The Louisiana Supreme Court has stated that the refusal to move on when ordered by police is not a crime unless it obstructs police in their official duties in making a lawful arrest, seizure of property, or service of process. State v. Huguet, 369 So.2d 1331, 1333-35 (1979); see also State v. Washington, 98-545 (La.App. 5 Cir. 12/16/98), 725 So.2d 587, 590. In 2006, the legislature amended La. R.S. 14:108 to further prohibit conduct that obstructs or interferes with an officer acting in his official capacity while “detaining” a suspect.
In this appeal, J.A.J. argues that under La. R.S. 14:108 the state must prove that he interfered or obstructed the arresting officer while acting in his official |7capacity and that because Detective Calbracie acted in a backup capacity, he cannot be found delinquent for resisting an officer under La. R.S. 14:108.
However, we find the evidence supports a finding that Detective Calbracie did in fact participate in the detention and questioning of the suspects and thus could be the detaining officer for purposes of La. R.S. 14:108.[15] Further, even if Detective Calbracie had not personally detained or questioned the suspects but had merely acted in a back-up capacity to the federal agents, we find the evidence presented sufficient to support J.A.J.’s adjudication.
The Louisiana Supreme Court has recognized that “[i]n making an arrest, for their own safety and that of their suspect, the police may take reasonable steps to assert complete command of the situation.” City of Lafayette v. Desormeaux, 06-1730 (La.10/16/07), 967 So.2d 477, 481-82. The Court also found that actions distracting officers and interfering with the “overall arrest operation” constitutes a violation of La. R.S. 14:108. Id. at 480-81 (quoting State v. Patterson, 98-2643 (La.App. 4 Cir. *454 3/29/00), 758 So.2d 955, 961, rev’d on other grounds, 00-1212 (La.3/28/01), 783 So.2d 1243).
Further, in State v. Johnson, 534 So.2d 529 (La.App. 5 Cir.1988), this Court found sufficient evidence of resisting an officer when the defendant refused to move on when instructed by an officer acting in a back-up capacity. In Johnson, a detective and three officers called for back-up assistance to provide crowd control as they prepared to execute a search warrant. One deputy, along with other officers, responded to the scene. As the officers proceeded to execute the search warrant, the defendant began to yell obscenities. The responding deputy asked the defendant several times to step back and to move on; initially, the defendant | scompIied but she subsequently returned. The responding deputy again asked the defendant to step back; the defendant refused and continued to yell obscenities, which ultimately resulted in her arrest.[16]
In Johnson, this Court found that the defendant obstructed the police officers’ execution of the search warrant by her continued attempts to interfere and her refusal to move on when instructed to do so by the responding deputy, who had responded to the scene in a back-up capacity to provide crowd control for the officers executing the search warrant. Id. at 530.
Here, the record reflects that J.A.J. repeatedly interjected himself into a large and active “arrest operation” in which federal agents detained and arrested multiple suspects.[17] Detectives Cal-bracie and Wright testified that J.A.J.’s actions distracted them and compromised the security for the ICE agents’ overall investigation, detention, and arrest of the suspects.[18] The testimony and video evidence presented at the adjudication hearing show that the detectives — while in full uniform with badges displayed prominently around their necks — gave J.A.J. multiple warnings to move on prior to his arrest.
We find that the evidence, viewed in the light most favorable to the prosecution, is sufficient to support the judgment adjudicating J.A.J. a delinquent for resisting an officer in violation of La. R.S. 14:108. This assignment of error is without merit.

ERRORS PATENT REVIEW

This Court has determined that in juvenile cases, La.C.Cr.P. art. 920 mandates an errors patent review. State in Interest of D.S., 11-116 (La.App. 5 Cir. 12/28/11), 83 So.3d 1131,1139.
|9La. Ch.C. art. 892 requires the trial court to conduct a disposition hearing prior to entering a judgment of disposition. The purpose of such a hearing is to hear evidence in order to make a determination of whether the child is in need of treatment or rehabilitation.[19] State in Interest *455 of C.D., 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 39. Absent a waiver by the juvenile, which does not appear in this record, the trial court erred in failing to conduct a hearing prior to entering a judgment of disposition. See State in Interest of O.R., 96-890 (La.App. 5 Cir. 2/25/97), 690 So.2d 200, 202.

CONCLUSION

Accordingly, we affirm J.A.J.’s adjudication for resisting an officer in violation of La. R.S. 14:108 but vacate his disposition and remand this matter to the trial court for a disposition hearing in accordance with La. Ch.C. arts. 892 and 893.

ADJUDICATION AFFIRMED; DISPOSITION VACATED; REMANDED.

. At the time of the June 13, 2012 alleged offense, J.A.J. would have been fourteen-years old. Pursuant to the requirements for confidentiality in juvenile proceedings set forth in La. Ch.C. art. 412, the juvenile-defendant herein is referred to by initials only.

. An adjudication hearing is conducted by the juvenile judge. LA. Ch.C. art. 882. In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch.C. art. 883.

. The Louisiana Children’s Code refers to a judgment of disposition rather than a sentence. La. Ch.C. arts. 678(A) and 684(A).

. La. Ch.C. art. 892 requires the trial court to conduct a disposition hearing prior to entering a judgment of disposition. The purpose of such a hearing is to hear evidence in order to make a determination of whether the child is in need of treatment or rehabilitation. State in Interest of C.D., 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 39.

. La. Ch.C. art. 301(1) indicates that St. Charles Parish does not have a separate juvenile court created by law. Therefore, pursuant to La. Ch.C. art. 301(2), the Twenty-Ninth Judicial District Court for the Parish of St. Charles has original juvenile jurisdiction for juvenile proceedings within its parish.

. The record refers to a Detective “Right” and “Wright.” Throughout this opinion, we will refer to the detective as Detective Wright.

. Detective Calbracie testified that he worked in his capacity as a detective and a law enforcement agent for the St. Charles Parish Sheriff’s Office on June 13, 2012, and that providing security when necessary to ensure the safety of an investigation and other officers was in his job description. He further testified that he had the power to make arrests for offenses committed in his presence and that he participated in the questioning of the detained suspects.

. The detectives seized the video camera following J.A.J.'s arrest. Detectives Calbracie and Wright made a CD copy of the video from the camera. The video is of very poor quality, nearly inaudible and at times appears to be in slow motion. Detective Calbracie testified that the CD of the video is of inferior quality to the original he viewed on the video camera. Detective Calbracie admitted that the original video is no longer available and that he could have inadvertently erased the original video when he transposed it to a CD.

. Detective Calbracie testified as the juvenile walked away he called the detectives "freakin faggots.”

. The testimony reflects that there were three law enforcement vehicles on the scene.

. The record reflects that J.A J.’s mother was also arrested at the scene.

. Detective Wright testified that in this situation he believed an appropriate reactionary gap to be 21 to 30 feet.

. In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch.C. art. 883.

.As the Louisiana Supreme Court stated in State ex ret. Batiste, 367 So.2d 784, 788 (La. 1979):
[j]uvenile delinquency proceedings do not fall within the category of criminal prosecutions, as is evident from long established jurisprudence ..., and the special juvenile provisions within the judiciary article of the constitution. La. Const.1974, art. 5, ss 10, 18 and 19. Accordingly, since the constitution does not provide otherwise, the scope of *453 review of this court in juvenile delinquency proceedings extends to both the law and the facts.

. Detective Calbracie indicated that he also participated in the detention and questioning of the suspects. In describing the arrest scene, Detective Calbracie testified that several suspects were seated on the ground for questioning and that, "we were speaking with these individuals.”

. The defendant in Johnson became combative during her arrest and a struggle ensued.

. See Desormeaux, supra.; Patterson, supra.

. Detective Wright testified that at some point J.A.J. would circle around and approach die detectives from behind, thus diverting his attention away from the scene.

. La. Ch.C. art. 893 discusses the evidence to be produced at a disposition hearing and provides:
A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.
B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not ad *455 missible at the adjudication hearing. Upon motion of the district attorney or the child, the court may hear testimony from the victim of the offense.
C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at the hearing. Sources of confidential information need not be disclosed.
D. If the court finds that the child is in need of treatment or rehabilitation as a delinquent child, the court shall proceed immediately to make any appropriate disposition authorized by Articles 895 through 899.